UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-21585-Civ-SCOLA

DANIEL LAROSA,

    Plaintiff,
vs.

CITY OF SWEETWATER, *et al.*,

    Defendants.
_____/

### Order On Motions To Dismiss

According to the Plaintiff, Daniel Larosa, in early March 2012, two police officers from the City of Sweetwater Police Department entered Our Pride Academy, a school for individuals with developmental disabilities where Larosa worked, and arrested Larosa for having threatened a public servant with the intent to influence the public servant's performance of official duties. (Am. Compl. ¶¶ 17-18, ECF No. 8.) The arrest and charge stemmed from a posting on Larosa's Instagram account of the album art for a song titled "Diary of a Cop Killa" and a posting under that album art where Larosa wrote "It's sweetwater pd that's gotta die!!! Lol." (Am. Compl. ¶¶ 13-14.)

Larosa has sued the City of Sweetwater, as well as the arresting officers, the Chief of Police, and the Mayor of Sweetwater. Larosa has alleged that the City infringed his civil rights, a violation of 42 U.S.C. § 1983, falsely arrested him, and defamed him. The City of Sweetwater has moved to dismiss all of the claims against the City (Counts 1, 2, 3, & 4).[1] The Chief of Police, Roberto Fulgueira, and the Mayor of Sweetwater, Manuel L. Marono, have also moved to dismiss the claims against them (Count 17). Chief Fulgueira and Mayor Marono have both adopted the City of Sweetwater's Motion to Dismiss. (Mots. Dismiss ¶ 3, ECF Nos. 12 & 14.) For the reasons explained in this Order, the Section 1983 claims will be dismissed without prejudice because they have not been adequately alleged. All other claims remain.

    **A. Larosa's complaint is not a *shotgun pleading*.**

The City of Sweetwater first argues Larosa's complaint against it should be summarily dismissed as an improper *shotgun pleading*. The term *shotgun pleading* is a term of art in the law. It refers to pleadings involving multiple

---

[1] Larosa has abandoned his false imprisonment claim (Count 2) since it is identical to his false arrest claim. (Resp. ¶ 42, ECF No. 15.)

defendants and complicated factual scenarios, where the plaintiff is imprecise in asserting which actions are attributable to which defendants. "The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

This argument deserves little attention. Put simply, Larosa's complaint is not a shotgun pleading. The complaint details a precise set of facts, and then alleges several theories of liability against the several defendants. To label this complaint a *shotgun pleading* is to fundamentally misunderstand what that term means.

> **B. The complaint fails to adequately allege facts to support the existence of an official policy or custom by the City of Sweetwater that directly resulted in the alleged constitutional violation.**

Any person who deprives another "of any rights, privileges, or immunities secured by the Constitution and laws," while acting under color of state law, is liable to the person whose rights were violated. 42 U.S.C. § 1983. This law "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985).

To state a claim under Section 1983, a plaintiff must allege that: (1) the defendant deprived him of a right secured by the United States Constitution or federal law; and (2) such deprivation occurred under color of state law. *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *See, e.g., Troupe v. Sarasota Cnty.*, 419 F.3d 1160, 1165 (11th Cir. 2005).

Municipalities and other local government entities are subject to liability under Section 1983 and may be sued directly for relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality or other local government entity "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Only if the alleged constitutional violations resulted from a custom, policy, or practice of a local government entity may that entity be held liable. *Id.* at 694; *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987); *see also Farred v. Hicks*, 915 F.2d 1530, 1532–33 (11th Cir. 1990) ("Governmental entities may be held liable under section 1983 when a governmental 'policy or custom' is

the 'moving force' behind the constitutional deprivation.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Monell*, 436 U.S. at 694.

A policy or custom "is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval." *German v. Broward Cnty. Sheriff's Office*, 315 F. App'x 773, 776 (11th Cir. 2009) (citing *Depew v. City of St, Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986)). For example, even where a municipality provides rules and regulations for the operation of its police department, if those rules are repeatedly violated and the municipality has knowledge of the conduct but fails to rectify the situation then it may be liable. *Depew*, 787 F.2d at 1499 ("The continued failure of the [municipality] to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983."). "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Id.*

Larosa alleges several policies or practices, maintained by the City of Sweetwater, that he claims resulted in his unconstitutional arrest: (1) failing to properly screen, train, and discipline the officers of the police department; (2) having a practice of making extra-jurisdictional, warrantless, and unconstitutional arrests; and (3) failing to investigate unconstitutional arrests made by officers and failing to discipline the officers making those improper arrests. (Am. Compl. ¶¶ 29-30, ECF No. 8.) In support of these general allegations, Larosa offers no factual allegations other than his own arrest and the circumstances surrounding that arrest. Larosa has failed to allege that other similar arrests have been carried out, or any other facts that would support his conclusory allegations that the City of Sweetwater has a practice of making extra-jurisdictional, warrantless arrests. He has also not alleged any facts that would lead to a reasonable inference that the City of Sweetwater has a practice of failing to properly and adequately screen, train, and discipline the officers of the police department. Given these conclusory allegations, this claim must be dismissed without prejudice.

**C. The complaint fails to adequately allege facts to support the existence of supervisory liability on the part of either the Chief of Police or the Mayor of the City of Sweetwater.**

In addition to allowing a municipality to be held liable, Section 1983 also permits a supervisor to be held individually liable.[2] Supervisors, like municipalities, cannot be held liable "for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v.*

---

[2] If a supervisory official is sued in his or her official capacity it is treated "in all respects other than name" as a suit against the governmental entity. *Geter v. Wille*, 846 F.2d 1352, 1354 n.1 (11th Cir. 1988).

*Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.*

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* (internal quotations, citations, & punctuation omitted). Where a supervisory official is sued in his or her individual capacity for the actions of a subordinate the standard for deciding whether the supervisor is liable is "extremely rigorous." *Cottone*, 326 F.3d at 1360.

Larosa alleges that Chief Fulgueira and Mayor Marono were "deliberately indifferent to constitutionally protected rights" by failing to implement policies or procedures to properly train, supervise, and discipline police officers regarding their knowledge of, and adherence to, the rules concerning lawful arrests. (Am. Compl. ¶¶ 174-77, ECF No. 8.) As a result of this failure, Larosa alleges that "it became the *de facto* policy and custom of the City and the Department for police officers to disregard the constitutional rights of the general public." (*Id.* ¶ 178.)

Larosa has not alleged that Chief Fulgueira and Mayor Marono personally participated in the alleged unconstitutional conduct which led to his arrest. Instead, Larosa is attempting to assert a causal connection between these Defendants and his wrongful arrest based on Fulgueira's and Marono's alleged failure to properly train, supervise, and discipline the City's police officers. But Larosa has not alleged a history of widespread abuse that would put Fulgueira and Marono on notice of the need to correct the alleged wrongdoing. Other than Larosa's own arrest, there is not another incident of wrongdoing alleged in the Amended Complaint's general-fact section or in the single count against Fulgueira and Marono. "[W]ithout notice of a need to train or supervise in a particular area" a supervisor cannot be held liable for having failed to train or supervise. *See Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998).

Although there exists "a narrow range of circumstances that a plaintiff might succeed without showing a pattern of constitutional violations" this scenario only applies where a constitutional violation is "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to

handle recurring situations." *Id.* at 1352 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). Just as Larosa failed to assert a history of widespread abuse, he has also failed to allege that the type of constitutional violation at issue in this case is the sort of highly predictable consequence of inadequate training that is necessary to state a claim for supervisory liability under Section 1983.

There is a final problem with Larosa's failure-to-train allegations. "[F]or liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). Larosa's allegations are too broad sweeping and generic. (*See, e.g.*, Am. Compl. ¶ 177 ("Despite knowledge and notice, Defendants, Fulgueira and Marono . . . failed to implement policies, procedures, or programs to properly train, supervise, or discipline said police officers, and otherwise failed to take any action to protect the public from the danger presented by these police officers.").) Larosa has not adequately asserted the connection between the constitutional violation that he allegedly suffered and the deficiencies in the City of Sweetwater's training or supervision policies that are attributable to Fulgueira and Marono.

### D. Larosa's false arrest claim presents a valid claim upon which relief may be granted against the City of Sweetwater.

The City of Sweetwater presents two alternative arguments against Larosa's false arrest claim: (1) the claim is barred because the City is an immune sovereign, and (2) a negligence claim against a police department is not an actionable cause of action under Florida law. Neither argument is persuasive.

#### *(1) The doctrine of sovereign immunity does not save the City from this lawsuit.*

The State of Florida has waived sovereign immunity on behalf of itself and its municipalities for the negligent acts of municipal employees "while acting within the scope of the employee's office or employment under circumstances in which the [municipality], if a private person, would be liable to the claimant, in accordance with the general laws of [Florida]." Fla. Stat. § 768.28(1), (2) (2012). When carrying out their assigned duties, municipal employees are within the *scope of their employment* so long as they do not abuse their authority in an "extravagant manner"; [t]he usurpation of power has reference to the unlawful assumption, or seizure and exercise of power not vested in one." *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 731 (Fla. 1996) (quoting *Swenson v. Cahoon*, 152 So. 203, 204 (Fla. 1933)). In one case, a police officer arrested a child under a pretext so that he later could sexually molest her. The court held: "The officer's misconduct, though illegal, clearly was accomplished through an abuse of power

lawfully vested in the officer, not an unlawful usurpation of power the officer did not rightfully possess." *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 732 (Fla. 1996).

In this case, Larosa has alleged that the City of Sweetwater's police officers unlawfully arrested him for the crime of corruption by threat against a public servant after posting on his Instagram account "It's sweetwater pd that's gotta die!!! Lol." (Am. Compl. ¶¶ 14, 18-19, ECF No. 8.) If a police officer's pretextual arrest of a child in order to abuse her was deemed to have been within the scope of his employment for purposes of a sovereign-immunity analysis, then certainly the Sweetwater police officers' alleged actions in arresting Larosa were likewise within the scope of their employment. Nothing the Sweetwater police officers are alleged to have done would constitute a usurpation of power the officers did not rightfully possess. Accordingly, the motion to dismiss must be denied.

### *(2) The City of Sweetwater may be liable for the negligence of its police officers in this context.*

The City seems to fundamentally misunderstand the law regarding bringing a negligence suit against a municipality. The City of Sweetwater cites to decisional law for the proposition that "[p]olice negligence in the investigation and handling of a matter is not actionable." (Mot. Dismiss 7, ECF No. 11.) But the cases cited by the City all involve situations where crime victims are suing the police for having failed to prevent the crime that harmed them. *See, e.g., Orlando v. Kazarian*, 481 So. 2d 506, 507 (Fla. 5th DCA 1986) (explaining that the City of Orlando was not liable to a victim of an attack, even where the police appeared to have botched the initial report of a threat and failed to follow up even after being requested to do so); *see also Everton v. Willard,* 468 So. 2d 936, 938 (Fla. 1985) ("The victim of a criminal offense, which might have been prevented through reasonable law enforcement action, does not establish a common law duty of care to the individual citizen and resulting tort liability, absent a special duty to the victim.").

In this lawsuit, Larosa is not a crime victim claiming that the police were negligent in stopping his assailant. Larosa has plainly alleged that City of Sweetwater police officers unlawfully restrained him against his will and that the detention was unreasonable and unwarranted under the circumstances. Even when alleged against law enforcement officials, these allegations are enough to make out a claim for false arrest. *See Jibory v. City of Jacksonville*, 920 So. 2d 666, 667 n.1 (Fla. 1st DCA 2005). The City of Sweetwater's argument against this claim is completely misplaced and contrary to the decisional law of Florida. Accordingly, the motion to dismiss must be denied.

### E. Larosa's defamation claim presents a valid claim upon which relief may be granted against the City of Sweetwater.

The City of Sweetwater argues that, under Florida law, it is absolutely immune from liability for defamation. Florida law does recognize absolute immunity to executive officials with respect to defamatory publications, *but only where* the publication was made in connection with the performance of their official duties. *Densmore v. City of Boca Raton*, 368 So. 2d 945, 947 (Fla. 4th DCA 1979). Larosa has alleged that the defamatory publications, like the "illegitimate" arrest of Larosa, did not "arise out of any official and authorized act." (Am. Compl. ¶ 61, ECF No. 8.) Accordingly, the motion to dismiss the defamation claim must be denied.

### F. Conclusion

It is **ordered** that Defendant City of Sweetwater's Motion to Dismiss (ECF No. 11) is **granted in part and denied in part**. It is **further ordered** that Defendant Fulgueira's Motion to Dismiss (ECF No. 12) and Defendant Marono's Motion to Dismiss (ECF No. 14) are both **granted**. Counts 1 and 17, of the Amended Complaint, are dismissed without prejudice. Count 3 is dismissed with prejudice.

Larosa may file a second amended complaint by January 28, 2014. The City of Sweetwater's answer is due by February 7, 2014. If Larosa files a second amended complaint reasserting claims against Marono and Fulgueira, their answers are due by February 7, 2014.

**Done and ordered**, in chambers at Miami, Florida, on January 22, 2014.

_____
Robert N. Scola, Jr.
United States District Judge