United States District Court
for the
Southern District of Florida

Daniel Larosa, Plaintiff )
)
v. )
) Civil Action No. 13-21585-Civ-Scola
City Of Sweetwater, Richard )
Brenner, Octavio Oliu, and others, )
Defendants )

**Order On Defendants' Motion To Dismiss**

According to Daniel Larosa, in March 2012, two police officers from the City of Sweetwater Police Department, lacking a warrant or probable cause, entered a school for individuals with developmental disabilities where Larosa worked, and arrested him for allegedly threatening a public servant with the intent to influence the public servant's performance of official duties. (Am. Compl. ¶¶17–18, ECF No. 8). The arrest and charge stemmed from the following post on Larosa's Instagram account:



(Am. Compl. Ex. B, ECF No. 8.)   The post is the album art for the DJ Raid/Combine in Da Hood song "Diary of a Cop Killa" and a comment where Larosa wrote "It's sweetwater pd that's gotta die!!! Lol." (Am. Compl. ¶¶13–14.)

Larosa sued Officer Richard Brenner and Officer Octavio Oliu, the two Sweetwater Police Department Officers who arrested him.  He alleges that the Officers violated his civil rights, and that they falsely arrested him, maliciously prosecuted him, defamed him, and intentionally inflicted emotional distress upon him.  The Officers claim that they are entitled to qualified immunity for the federal claims and statutory immunity for the state-law claims.  For the reasons explained in this Order, the Court rejects the Officers' qualified immunity claims.  The Court finds that Larosa did not sufficiently plead most of the other claims, but that those claims can be remedied through amendment.  Those claims will be dismissed without prejudice.

## 1. Federal-law Claims

### A. The Plaintiff's federal-law, civil-rights claims (counts 5 & 11) state a viable claim.

Larosa has alleged that the Officers violated civil rights guaranteed to him by the First, Fourth, Fifth, and Fourteenth Amendments.  (*See, e.g.*, Am. Compl. ¶68, ECF No. 8.)   The Officers argue that since the crux of his complaint is that he was wrongfully arrested, his only possible claim under Section 1983 is based on his Fourth Amendment rights.  (Mot. Dismiss 4–5, ECF No. 53.)

The Officers do not cite any caselaw for the proposition that a plaintiff must choose among various Constitutional rights and only proceed under the one that was most violated.  The cases the Officers rely on are not convincing.  For example, one case cited on by the Officers, *Albright v. Oliver*, stands for the general proposition that, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the claim]."  *Albright v. Oliver*, 510 U.S. 566, 273 (1994) (internal quotation marks omitted).  But here, Larosa is not alleging a general due process violation.  Instead, he has pointed to particular Amendments, namely the First, Fourth, Fifth, and Fourteenth.  Section 1983 provides a cause of action for the violation "of any rights, privileges, or immunities secured by the Constitution and laws"—not just the right that was most violated.  42 U.S.C. § 1983.  The statute refers to Constitutional "rights," "privileges," or "immunities" all in the plural.  This unambiguously contemplates that a person may claim that a police officer

violated more than one of his Constitutional rights.  The Court rejects the Officers' arguments on this point.

### B. The Officers are not entitled to qualified immunity.

The Officers argue that they are immune from this lawsuit because they had probable cause (or arguable probable cause) to arrest Larosa for corruption by threat. (Mot. Dismiss 12–13, ECF No. 53.)  They also claim that, even if there were no probable cause, under the "unique facts and circumstances" of this case that it was not clearly established that they should not have arrested Larosa. (*Id.* at 13.)

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quotation marks omitted).  "Qualified immunity represents a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." *Id.*  "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

To claim qualified immunity a public official must first establish that she was engaged in a "discretionary duty." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005).  If the public official establishes she was acting in a discretionary capacity, the burden shifts to the plaintiff "to show that qualified immunity is not appropriate by satisfying a two-part inquiry": (1) that the official "violated a constitutional right"; and (2) that the "right was clearly established at the time of the incident." *Id.*  The law requires that the right be "clearly established" to ensure that the public official is on notice that her conduct is unlawful before she is subjected to a suit. *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009).  "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.* at 1291-92 (internal citations omitted).  A court must undertake this analysis "in light of the specific context of the case, not as a broad general proposition." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  Under the *clearly egregious* prong, "only if the officers' conduct was so egregious and

unacceptable so as to have blatantly violated the Constitution would qualified immunity be unavailable." *Lewis*, 561 F.3d at 1292.  In other words, a "plaintiff must show that the official's conduct was so far beyond the hazy border between [legitimate conduct and illegitimate conduct] that the official had to know he was violating the Constitution even without case law on point" (*i.e.*, where "every reasonable officer would conclude" that the act was "plainly unlawful"). *Id.*

The parties do not dispute that the Officers in this case were acting in their discretionary capacity for purposes of the qualified-immunity analysis. The burden now shifts to Larosa to establish that the Officers violated a constitutional right, and that the right was clearly established.

### (1) *The Officers allegedly violated Larosa's clearly established First Amendment rights.*

Larosa argues that the Officers are not entitled to qualified immunity because they violated his First Amendment right to be free from retaliation for the exercise of constitutionally-protected speech. (Resp. ¶39, ECF No. 65.)  He points to his allegations that the Officers arrested him because of his Instragram post. (*Id.* (citing Am. Compl. ¶¶13–14, 16–19, 67, & 119, ECF No. 8).)  The Officers argue that there is no First Amendment right "to be free from a retaliatory arrest that is otherwise supported by probable cause." (Reply 3, ECF No. 66 (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012)).)

To state a First Amendment retaliation claim, a plaintiff must establish "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).  "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254.

Larosa has adequately alleged that the Officers violated his First Amendment right to be free from retaliation for the exercise of constitutionally protected speech.  As explained in more detail in the following sections, the Officers did not have probable cause to arrest Larosa for the crime of corruption by threat.  Absent probable cause, the law is "clearly established" that law enforcement officers may not retaliate against citizens for exercising their Free Speech rights. *Id.* at 1255–56 ("[The Eleventh Circuit] and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights.").

**(2) *The Officers allegedly violated Larosa's clearly established Fourth Amendment rights.***

Larosa argues that the Officers violated his Fourth Amendment rights when they arrested him without a warrant or probable cause. (Resp. ¶43, ECF 65.) The Officers assert that they had probable cause, or arguable probable cause, to arrest him for corruption by threat. (Corruption by threat is the only offense ever mentioned by the Officers, either at the time of the arrest or in their briefs before this Court.)

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226, 1232 (11th Cir. 2004). "The law is 'clearly established' that an arrest without a warrant or probable cause to believe a crime has been committed violates the fourth amendment." *Herren v. Bowyer*, 850 F.2d 1543, 1547 (11th Cir. 1988). So this issue turns on whether the Officers had probable cause to arrest Larosa for corruption by threat. If they did, then they would be entitled to qualified immunity. This Court finds that they did not.

*(a) The Officers did not have probable cause to arrest Larosa.*

Probable cause to arrest a person exists when reasonably trustworthy facts and circumstances lead a prudent person to believe that an individual has violated the law, is violating the law, or will violate the law. *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). Under Florida law, it is a crime to threaten to harm a public servant in order to get that public servant to do, or refrain from doing, some discretionary act. Fla. Stat. § 838.021(1) (2011); *accord Nugent v. Florida*, 45 So. 3d 528, 532 (Fla. 4th DCA 2010). This crime is known as "corruption by threat." *Id.*

In this case, the Officers arrested Larosa for corruption by threat based on his Instagram post. The Instragram post is not directed to any particular public servant, nor does it identify anything a public servant should do, or refrain from doing, to avoid the threatened harm. (Am. Compl. Ex. B, ECF No. 8.) A demand to take, or avoid taking, some discretionary act is an essential element to the crime of corruption by threat because it's not possible to influence a person to do something if you don't indicate what you want done. Since the Instagram post contains no demand, either express or implied, the Officers did not have probable cause to arrest Larosa for the crime of corruption by threat.

(b) *The Officers did not have arguable probable cause to arrest Larosa.*

A police officer who makes an arrest without probable cause may still be entitled to qualified immunity "if there was arguable probable cause for the arrest." *Kingsland*, 382 F.3d at 1232. Arguable probable cause may exist where a public official makes a "good faith," "reasonable mistake" in the legitimate performance of his or her duties. *Id.* at 1233. But a public official who "recklessly or deliberately" violates the law is not entitled to immunity under the arguable-probable-cause doctrine. *Id.* at 1233–34 ("The principles behind qualified immunity would be rendered meaningless if such immunity could be invoked to shelter officers who, because of their own interests, allegedly flout the law, abuse their authority, and deliberately imperil those they are employed to serve and protect."). A court's determination of whether arguable probable cause exists is guided by the elements of the alleged crime. *Lomax v. Diaz*, 390 F. App'x 900, 901 (11th Cir. 2010) (finding arguable probable cause that the plaintiff committed a battery (*i.e.*, harmful or offensive contact) based on the victim's statement that the plaintiff "poured hot water on her").

Based on Larosa's allegations, the Officers in this case did not have arguable probable cause to arrest him. This is not a situation where the Officers, acting in the heat of the moment, could have formed a good-faith belief that Larosa violated the corruption-by-threat law. The Instagram post— the only evidence the Officers allegedly had— only contained the *threat* element of the corruption-by-threat statute. Without the *corruption* element (*i.e.*, a demand, either express or implied) no reasonable officer could have concluded that Larosa violated the corruption-by-threat statute through the Instragram post. While the arguable-probable-cause standard does not require an arresting officer prove every element of a crime before making an arrest, it at least forbids a police officer from ignoring the obvious fact that a critical element of the crime is glaringly missing.

By analogy, Florida's driving-under-the-influence law has three elements: (1) "that the defendant was driving"; (2) "that the defendant was under the influence of [alcohol]"; and (3) "that the defendant was affected to the extent that his normal faculties were impaired." *State v. Tagner*, 673 So. 2d 57, 58 (Fla. 4th DCA 1996). A police officer would not have arguable probable cause to enter a bar, identify an intoxicated patron sitting at the bar and arrest him for driving under the influence. No reasonable police officer would think there was probable cause for such an arrest because obviously the person was not *driving* when the arrest for *driving* under the influence was made. The same holds true for the Officers in this case when they arrested Larosa for corruption

by threat because the corruption element (*i.e.*, a demand, express or implied) was conspicuously absent.

**(3) *Larosa has forfeited any argument relating to his Fifth Amendment claims.***

As explained above, the Officers asserted qualified-immunity since they were acting in a discretionary capacity when arresting Larosa. The burden then shifted to Larosa to establish that the Officers violated a clearly established, constitutional right. Larosa has not presented any argument as to what right under the Fifth Amendment the Officers allegedly violated and whether that right was clearly established. In failing to present any argument, Larosa has forfeited his claims under the Fifth Amendment. The Court will dismiss these claims under the qualified-immunity doctrine.

## 2. State-law claims

The Officers assert that they are immune from suit regarding Larosa's state-law claims. Specifically, the state-law claims consist of counts 6 and 12 (for false arrest), counts 8 and 14 (for malicious prosecution), counts 9 and 15 (for defamation), and counts 10 and 16 (for intentional infliction of emotional distress). The Officers' argument hinges on the allegations that they were acting within the course and scope of their employment when they allegedly wrongfully arrested Larosa. (Mot. Dismiss 6, ECF No. 53.) Larosa responds that he should be permitted to plead in the alternative, asserting liability against both the Officers and the City of Sweetwater. (Resp. ¶24, ECF No. 65.) The Officers also claim that Larosa's allegations are not sufficient to state a claim. Larosa contends he has plead enough. The Court concludes that Larosa may assert liability against the Officers and alternatively against the City, but that he has not adequately done so here. Also, Larosa's claim for intentional infliction of emotional distress fails to state a viable claim.

### A. The Plaintiff's false-arrest and malicious-prosecution claims are insufficiently plead.

Florida has provided for a limited waiver of its sovereign immunity. Fla. Stat. § 768.28 (2011). The waiver-of-sovereign-immunity statute shields individual officers from liability and shifts the liability onto the governmental entity as long as the officer is acting within the scope of her employment. Fla. Stat. § 768.28(9)(a). But where an officer acts "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" the sovereign-immunity shield falls away and the

Officer is subject to liability.  *Id.*  In other words, either the governmental entity can be held liable (if the officer was acting within the scope of her job), or the officer can be held liable (if the officer was acting in bad faith or with malice), but not both.  *McGee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996).

In most cases, a jury will decide the question of liability as between the governmental entity or the individual officer.  *See id.*  For sovereign immunity purposes, a court cannot determine liability unless a case presents a set of facts "so extreme as to constitute a clearly unlawful usurpation of authority the [officer] does not rightfully possess."  *Id.*  In one example, a court examined allegations that an officer falsely arrested a young girl for shoplifting with the true goal of sexually molesting her.  The court ruled that it could not determine, "as a matter of law, that the acts alleged were or were not done in furtherance of [the officer's] duties to apprehend a shoplifting suspect."  *Hennagan v. Dep't of Highway Safety & Motor Vehicles*, 467 So. 2d 748, 751 (Fla. 1st DCA 1985).

Larosa's claims are insufficiently alleged to plead a case in the alternative against the Officers.  Regarding the false arrest claims (counts 6 and 12) Larosa alleges that the Officers "acted with deliberate, callous, or reckless indifference."  (Am. Compl. ¶¶77 & 129 ECF No. 8.)  Regarding the malicious prosecution claims (counts 8 and 14), Larosa alleges that the Officers acted "for retaliation and other malicious and nefarious purposes" and "acted with deliberate, callous, or reckless indifference."  (Am. Compl. ¶¶90, 97, 142, & 149, ECF No. 8.)  In another case, these allegations might be adequate.  But here, when Larosa is pleading in the alternative, they are not sufficient.  Earlier in the pleading, Larosa clearly asserts that the Officers were "within the course and scope of their employment."  (Am. Compl. ¶18, ECF No. 8.)  If Larosa intends to alternatively allege that the Officers acted in bad faith or with a malicious purpose (*i.e.*, outside of the scope of employment) he must allege that just as clearly.  This shouldn't be a difficult task since Federal Rule of Civil Procedure 9(b) permits a party to generally allege malice, intent, and other conditions of a person's mind.  For these reasons, the Court will dismiss Larosa's claims for false arrest and malicious prosecution without prejudice.  The Court will give Larosa an opportunity to amend.

## B. The Plaintiff's defamation claims are not sufficiently plead.

The Officers argue that Larosa's defamation claims fail as a matter of law based on the doctrine of governmental privilege.  Larosa counters that the privilege is not applicable here because he has alleged that the Officers' statements did not serve any official purpose or arise out of an authorized act.

The Court finds that the defamation claims are not adequately alleged to avoid the application of the governmental-privilege doctrine.

Under Florida law, "statements made by officials of all branches of government in connection with their official duties [are] absolutely privileged." *Hauser v. Urchisin*, 231 So. 2d 6, 8 (Fla. 1970).  "This grant of immunity is justified because it is in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Stephens v. Geoghegan*, 702 So. 2d 517, 522 (Fla. 2d DCA 1997).  In deciding whether a statement was made within an officer's official duties (*i.e.*, within the scope of her office), courts should give "a broad definition to the term 'scope of office.'" *Crowder v. Barbati*, 987 So. 2d 166, 168 (Fla. 4th DCA 2008).  The privilege will generally apply except in the rare circumstances such as where a public official acts outside of the scope of his powers, or where the official's statements have no official purpose. *Densmore v. City of Boca Raton*, 368 So. 2d 945, 947 (Fla. 4th DCA 1979) ("For instance, if the city personnel rules prohibited the release of information concerning the discharge of an employee, the city manager would probably be acting beyond the scope of his duties if he disclosed such information.").

Here, Larosa's defamation claims (counts 9 and 15) incorporate by reference his general allegation that the Officers were acting "within the course and scope of their employment."  (Am. Compl. ¶18, 101, & 153, ECF No. 8.) Larosa has failed to allege in the alternative, within the defamation counts, that the Officers were acting outside of the scope of their employment.  Simply put, if the Officers were acting within the scope of their employment the governmental-privilege doctrine shields them from these defamation claims. Larosa can only assert the defamation claims if he alleges that the Officers were acting outside of the scope of their employment.  *See Gordon v. Beary,* No. 08-73-ORL-19, 2008 WL 3258496 at *9 n.12 (M.D. Fla. Aug. 6, 2008).  Since he has not done so here, these claims will be dismissed without prejudice.

### C. The Plaintiff has failed to state a viable claim for intentional infliction of emotional distress.

To plead a claim for intentional infliction of emotional distress, a plaintiff must assert that the defendant's conduct was so "extreme and outrageous" as to "go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized society." *LeGrande v. Emmanuel*, 889 So. 2d 991, 994–95 (Fla. 3d DCA 2004).  The Officers argue that Larosa's claims are not outrageous enough to meet the intentional-infliction-of-emotional-distress standard.  Larosa disagrees, arguing that the Officers went beyond name calling here, and physically arrested him.  The Court agrees with the Officers

that under the facts alleged, the Officers conduct was not so outrageous as to meet the extremely high intentional-infliction-of-emotional-distress standard.

In some circumstances, a police officer's decision to arrest a person without probable cause may constitute extreme and outrageous behavior. But not here—not in the context of Larosa's Instragram post. A person learning the details of the events here (as alleged by Larosa), that he posted a controversial image on his Instagram account, and followed it up with a comment that "It's sweetwater pd that's gotta die!!! Lol," would not be shocked and dismayed by the Officer's actions of allegedly arresting Larosa without probable cause at the school where he worked. The circumstances here simply do not present a situation where the Officers' actions go beyond all bounds of decency. If the law were otherwise, then an intentional-infliction-of-emotional-distress claim would necessarily accompany nearly every civil rights suit. The Court will dismiss this claim.

### 3. Conclusion

The Court **grants in part and denies in part** the Officers' Motion to Dismiss (ECF No. 53). Specifically, the Court grants the Officers' claim for qualified immunity as to Larosa's Fifth Amendment claims from counts 5 and 11 (Section 1983 claims). Larosa's First, Fourth, and Fourteenth Amendment claims from counts 5 and 11 remain. The Court denies the Officers' claims for qualified immunity as to these claims. The Court dismisses counts 6 and 12 (for false arrest) and counts 8 and 14 (for malicious prosecution) without prejudice. The Court dismisses counts 9 and 15 (for defamation) without prejudice. The Court dismisses counts 10 and 16 (for intentional infliction of emotional distress) with prejudice. And finally, the Court dismisses counts 7 and 13 (for false imprisonment) with prejudice since Larosa has abandoned these claims. (*See* Resp. ¶4 n.2, ECF No. 65.) Larosa may file a second amended complaint to address the shortcomings pointed out by the Court regarding the false-arrest, malicious-prosecution, and defamation claims. This second amended complaint must be filed by **October 10, 2014**.

**Done and ordered**, in chambers at Miami, Florida, on September 25, 2014.

Robert N. Scola, Jr.
United States District Judge